**LAW OFFICE OF RESHMA KAMATH**
Reshma Kamath, Cal. Bar No. 333800
700 El Camino Real, Suite 120, #1084
Menlo Park, California 94025, United States
Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com
Counsel for **PLAINTIFFS DUNIYA GROUP, INC.**

**IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA**
**FRESNO DIVISION**

| | |
|---|---|
| DUNIYA   GROUP , INC ., a Delaware Corporation , | ) **Case No.** |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| HANMI  BANK , a/k/a HANMI  FINANCIAL CORPORATION ; and DOES 1-10, *inclusive*, | ) **VERIFIED COMPLAINT FOR** ) **DAMAGES:** |
| | ) |
| Defendants. | ) **1.     BREACH OF CONTRACT;** |
| | ) **2.     INTENTIONAL** ) **MISREPRESENTATION;** |
| | ) **3.     CONTRACTUAL BREACH** ) **OF IMPLIED COVENANT OF GOOD** ) **FAITH AND FAIR DEALING;** |
| | ) **4.     BREACH OF FIDUCIARY** ) **DUTY;** |
| Related Cross Action | ) **5.     NEGLIGENCE;** |
| | ) |
| | ) **DEMAND FOR JURY TRIAL** |

*TO THE  HONORABLE  COURT,  ALL  PARTIES,  AND  ATTORNEYS  OF  RECORD, HEREIN:*

1

## VERIFIED COMPLAINT

## INTRODUCTION

COMES NOW, Plaintiffs DUNIYA GROUP, INC. hereby submit this verified Complaint and alleges as follows:

## PARTIES

1. Plaintiff DUNIYA GROUP, INC. ("PLAINTIFF") is a Delaware Corporation, duly registered in California, engaged in the business of entertainment, for profit, with its principal place of business located at 1615 South H Street Bakersfield CA 93307.

2. Dr. DHILLON RANDEEP SINGH, is an individual person, who was the agent of DUNIYA GROUP, INC. who negotiated and facilitated all dealings in this complaint.

3. YOUNG OHR hereafter referred to as ("YOUNG") is a natural person who signed the Purchase and Sale Agreement at issue as owner of property located at 6218 Sundale Ave. Bakersfield, CA 93309.

4. STEVE KIM ("KIM") is an individual and purported owner of property located at 6218 Sundale Ave. Bakersfield, CA 93309. PETER SONG ("SONG") is an individual person and purported owner of property located at 6218 Sundale Ave. Bakersfield, CA 93309. JOHN PARK ("PARK") is an individual person and purported owner of property located at 6218 Sundale Ave. Bakersfield, CA 93309.

5. PLAINTIFFS remain ignorant of the true names and capacities of DEFENDANTS, sued herein as DOES 2 to 10, inclusive, and therefore, sues these Defendants by such fictitious names. PLAINTIFFS will amend this complaint to allege their true names and capacities when they have been ascertained.

2

**VENUE AND JURISDICTION**

6.      The Superior Court of California in and for the County of Kern has jurisdiction over this action and venue is proper in this Court. The property was located in Kern County.

7.      The amount in controversy is more than $25,000.

**FACTUAL ALLEGATIONS**

8. On November 5, 2018, PLAINTIFFS AND DEFENDANTS entered into A Purchase and Sale Agreement for the commercial property and much of the chattel thereon located at 6218 Sundale Ave. Bakersfield, CA 93309 hereafter referred to as ("Subject Property.")

9. The purchase agreement contemplated the sale of the land upon which the Sundale Country Club is located and much of the chattel thereon, for use in operating a golf course and country club, by DEFENDANTS to PLAINTIFFS for the sum of $4,445,000.00.

10. The Purchase and Sale Agreement at issue was signed on November 3, 2018, by PLAINTIFF and November 5, 2019, by DEFENDANTS, YOUNG OHR, STEVE KIM, PETER SONG, and JOHN PARK.

11. The purchase and Sale Agreement contains an Appraisal Contingency which requires a written appraisal by a licensed or certified appraiser at "…no less than the purchase price."

12. The property at issue was appraised at $1,543,000.00, far below purchase price in the initial appraisal, so a second appraisal was arranged and time for negotiations extended.

13. DEFENDANTS allowed for the extended period of time in order to secure an appraisal that would come in at a value higher than the purchase price.

14. Again, the second appraisal came in at $2,560,000, a much lower amount than the purchase price.

15. Notwithstanding the low appraisals, PLAINTIFFS, in good faith, continued to negotiate and

3

to attempt to complete the sale.

16. During this process of appraisal and escrow, PLAINTIFFS and DEFENDANTS entered into an oral contract wherein it was agreed between PLAINTIFFS and DEFENDANTS that PLAINTIFF would have decision making power over the business aspects of the Sundale Country Club in an effort to bring the business back into a profit generating state.

17. As part of the Purchase and Sale Agreement, all shares (100%) of Sundale Country Club stock were also to be sold to PLAINTIFF at close of escrow, AND plaintiff would take over both the real property, chattel used in running the Country Club, and the Sundale Country Club Corporation.

18. At the time of Purchase and Sale Agreement negotiation, DEFENDANTS were in default on their mortgage payments and foreclosure was imminent.

19. Based on the misrepresentation of DEFENDANTS that PLAINTIFFS would have control over the business and would be able to begin bringing the Country Club back to a money-making state, PLAINTIFFS paid a substantial amount of money ($433,000.00) to bring the DEFENDANTS current on mortgage payments and to cure the default.

20. Between November 2018 and February 2018 PLAINTIFF made all mortgage payments to total $26,222.40 until March of 2019 when DEFENDANTS refused to allow PLAINTIFFS to control the business aspects of the Sundale Country Club in breach of the agreement between PLAINTIFFS and DEFENDANTS.

21. In March 2019, PLAINTIFFS ceased making payments on the mortgage due to DEFENDANTS' misrepresentations regarding control of the business and the anticipatory breach of their contract.

22. The reason that PLAINTIFFS negotiated for control of the Sundale Country Club was because

4

the manner in which it had been run for the previous several years had caused loss of profit, failure to meet mortgage payments, and imminent foreclosure.

23. During the entire time the contract was in effect prior to the anticipatory breach, and even afterwards, PLAINTIFFS requested and DEFENDANTS promised multiple times that DEFENDANTS provide profit and loss statements, and other financial documentation as required by PLAINTIFF to ascertain what changes in management techniques and accounting needed to be made to make the business operate at a profit. No P&L statements were ever provided, only monthly statements.

24. PLAINTIFFS discontinued making monthly mortgage payments in order to mitigate their damages as a result of the anticipatory breach by DEFENDANTS and because neither PLAINTIFFS nor DEFENDANTS were able to secure an appraisal that satisfied the terms of the contingency.

25. On 11/24/2021, Plaintiffs submitted to the court a COPY OF BANK FINANCING FEE AGREEMENT COPY OF ESCROW INSTRUCTIONS; COPY OF CURE DEFAULT AGREEMENT; COPY OF DEFAULT FUNDS RELEASE; COPY OF STCK PURCHASE AGREEMENT; COPY OF MINUTES OF SPECIAL MEETING OF THE BOARD OF DIRECTORS OF SUNDALE COUNTRY CLUB; COPY OF MANAGEMENT AGREEMENT; and, COPY OF LOAN TRANSFER LETTER FROM HANMI BANK.

26. Plaintiffs remain informed and believed, and thereon allege, that Defendant Hanmi Bank carelessly and negligently failed to exercise reasonable care and due diligence to avoid loss and mitigate damages which could purportedly be avoided had Defendant Hanmi Bank exercised reasonable care and diligence in their fiduciary duties.

27. From November 05, 2019 onward, Defendant Hanmi Bank knew or should have known,

through the loan draw process which undoubtedly involved periodic inspections of the subject property and progress reports documenting the delays, defaults, and defects, that the subject property loan was running behind schedule.

28. Rather than pull the plug on the afflicted project, Hanmi Bank was able to conceal the default based on its misrepresentations and omissions, and pay back the increased loan amount.

29. In fact, Young Ohr, had induced and misrepresented to Plaintiffs to dismiss the lawsuit against Hanmi Bank – this was based on misrepresenting to Plaintiffs, and inducing Plaintiffs fraudulently signing the Stock purchase agreement for the vacant land and subject property.

30. Defendant Hanmi Bank omitted from advising and communicating to Plaintiffs regarding any of the Country Club loan process. Defendant Hanmi Bank had a contract with the Defendants to implement Mortgage Loans and at all times refused to apply the program toward plaintiffs – the plaintiffs even after made numerous attempts to do so and at all times bank defendants refused to acknowledge or process the stated loan process, and apply the ratio of the metrics of the agreement with Defendants.

31. As a direct and proximate result of Defendant Hanmi Bank's conduct and lack thereof, Plaintiffs have incurred, and continue to incur, costs and expenses, related to litigation, consultation fees, and attorneys' fees to inspect, repair and mitigate damages, arising out of stated negligence, and to defend Plaintiffs' action.

32. These acts of defendants herein were all done willfully with malice and forethought and done to injure plaintiff so that defendants could collect more funding from the FDIC from showing further loan loss on the mortgage portfolio of Hanmi Bank which requires an award of punitive damages subject to proof.

33. For the foregoing reasons, PLAINTIFFS have suffered and continue to suffer damages in

the sum which is as yet to be determined.

34. In addition to the Appraisal Contingency not being fulfilled, we can state without equivocation that the entire process undertaken by all DEFENDANTS in the consummation of the Purchase and Sale Agreement constitutes breach of contract, fraudulent actions and representations, deceptive and unfair practices, and other wrongful conduct as herein alleged.

35. Plaintiffs have incurred actual, compensatory, punitive, special and general damages, in addition to mental anguish, trauma, stress, and anxiety – with attorneys' fees and costs related to this litigation and further expenses of the real property.

36. PLAINTIFF was to have control of the business operations and decisions and was to hire DEFENDANT, OHR as "manager" to assist in the BAU daily operations.

37. PLAINTIFF DUNIYA then paid the $433,000 to DEFENDANT OHR AND HANMI.

38. Since then, DEFENDANT actively prevented PLAINTIFF from implementing certain changes in operating strategies that would have benefited both parties.

39. DEFENDANTS' conduct was a breach of the written and verbal contract made between the parties.

40. Rather than allowing PLAINTIFF DUNIYA the control that was bargained for, DEFENDANTS undermined almost every attempt, made that PLAINTIFF DUNIYA implemented and deployed to generate positive cash flow and revenues into Sundale Country Club. DEFENDANT HANMI BANK was the recipient of the payment that PLAINTIFF DUNIYA had made.

41. PLAINTIFF DUNIYA would not have purchased the Sundale if it knew that Defendants would have thwarted PLAINTIFF DUNIYA's efforts each time.

42.  This is even after PLAINTIFF DUNIYA revived DEFENDANTS in paying the $433,000 to DEFENDANT HANMI BANK.

43.  Thus, the DEFENDANT HANMI BANK was the intended recipient of PLAINTIFF DUNIYA's payments to cure the default of DEFENDANT OHR in a bargain for exchange to control and enhance the business performance of the Sundale Country Club. DEFENDANT HANMI BANK accepted the payments from PLAINTIFF DUNIYA. DEFENDANT HANMI BANK was the intended beneficiary of PLAINTIFF DUNIYA's payments. Each of PLAINTIFF DUNIYA's checks was deposited into HANMI BANK.

44. Based on this, DEFENDANT HANMI BANK reinstated the loan of $380, 162.30, PLUS THE FORECLOSURE FEES $22, 933.50. This totaled to an amount of $425, 952.81. DEFENDANT HANMI BANK appeared in the contractual language of THE AGREEMENT SIGNED AND EXECUTED BETWEEN PLAINTIFF DUNIYA and DEFENDANT OHR.

45. KRIS Y. MIN FROM DEFENDANT HANMI BANK wrote to the Chicago title company. Then, DEFENDANT YOUNG OHR, and KRIS Y. MIN from DEFENDANT HANMI BANK actively wrote to each other, and discussed the foreclosure reinstatement.

46. PLAINTIFF DUNIYA and DEFENDANT OHR then signed escrow instructions.

47. Amongst several checks, PLAINTIFF DUNIYA then made checks directly to DEFENDANT HANMI BANK in the amounts of $26,693, and approximately $3,371.30. Some Fedex receipts were made to DEFENDANT HANMI BANK.

48. Then, there was a LOAN MODIFICATION AGREEMENT between borrower and lender, DEFENDANT OHR, and DEFENDANT HANMI BANK, respectively. The latter, DEFENDANT HANMI BANK was a signatory to this agreement. SUNDALE COUNTRY CLUB, INC. was also a signatory.

49. The STOCK PURCHASE AGREEMENT was also signed by PLAINTIFFS and DEFENDANT OHR. MOHAMMAD GORAYA also signed this agreement, and then wrote handwritten agreement about PLAINTIFFS paying DEFENDANT HANMI BANK directly to cure the default. The MANAGEMENT AGREEMENT was also signed by GORAYA and OHR.

50. The VACANT LAND PURCHASE AGREEMENT, AND JOINT ESCROW INSTRUCTIONS were signed by PLAINTIFFS and DEFENDANT OHR, as well as specifically stating that DEFENDANT HANMI bank's lawsuit would be dismissed by DEFENDANT OHR.

51. Thus, DEFENDANT OHR made DEFENDANT HANMI BANK an intended beneficiary of the LAND PURCHASE AGREEMENT. DEFENDANT HANMI BANK was a recipient of the bargain for exchange, and had knowledge of the agreement. DEFENDANT HANMI BANK was in privity of the AGREEMENT.

52. PLAINTIFFS paid DEFENDANT HANMI BANK $29,693 IN A CHECK. Unity property management LP was also involved. After accepting the check and wire payments from PLAINTIFF DUNIYA, DEFENDANT HANMI BANK resold the property to UNITY and Jaydev Patel.

53. Concurrently, DEFENDANT OHR thwarted the underlying reason that PLAINTIFF DUNIYA had entered into the contract and purchased the Sundale Country Club to reorganize and rebuild the operation into a sustainable investment, DEFENDANTS were in breach and have caused PLAINTIFF DUNIYA significant monetary damages.

///

///

///

///

9

## CAUSES OF ACTION ALLEGED

## FIRST CAUSE OF ACTION

### Breach of Contract

### (Against Defendants)

54. Plaintiff realleges and incorporate Paragraphs 1-53 of the verified Second Amended Complaint as though fully set forth herein.

55. PLAINTIFF DUNIYA and DEFENDANTS agreed that in return for PLAINTIFF curing DEFENDANT YOUNG OHR'S default for non-payment in not paying $433,000 to DEFENDANT HANMI BANK, DEFENDANT YOUNG OHR would allow PLAINTIFF to run and control the business activities of the Sundale Country Club.

56. PLAINTIFF was to have control of the business operations and decisions and was to hire DEFENDANT, OHR as "manager" to assist in the BAU daily operations.

57. PLAINTIFF DUNIYA then paid the $433,000 to DEFENDANT OHR AND HANMI.

58. Since then, DEFENDANT actively prevented PLAINTIFF from implementing certain changes in operating strategies that would have benefited both parties.

59. DEFENDANTS' conduct was a breach of the written and verbal contract made between the parties.

61. Rather than allowing PLAINTIFF DUNIYA the control that was bargained for, DEFENDANTS undermined almost every attempt, made that PLAINTIFF DUNIYA implemented and deployed to generate positive cash flow and revenues into Sundale Country Club. DEFENDANT HANMI BANK was the recipient of the payment that PLAINTIFF DUNIYA had made.

62. PLAINTIFF DUNIYA would not have purchased the Sundale if it knew that Defendants would have thwarted PLAINTIFF DUNIYA's efforts each time. This is even after PLAINTIFF DUNIYA revived DEFENDANTS in paying the $433,000 to DEFENDANT HANMI BANK.

63. Thus, the DEFENDANT HANMI BANK was the intended recipient of PLAINTIFF DUNIYA's payments to cure the default of DEFENDANT OHR in a bargain for exchange to control and enhance the business performance of the Sundale Country Club. DEFENDANT HANMI BANK accepted the payments from PLAINTIFF DUNIYA. DEFENDANT HANMI BANK was the intended beneficiary of PLAINTIFF DUNIYA's payments.

64. Each of PLAINTIFF DUNIYA's checks was deposited into HANMI BANK. Based on this, DEFENDANT HANMI BANK reinstated the loan of $380, 162.30, PLUS THE FORECLOSURE FEES $22, 933.50. This totaled to an amount of $425, 952.81.

65. DEFENDANT HANMI BANK appeared in the contractual language of THE AGREEMENT SIGNED AND EXECUTED BETWEEN PLAINTIFF DUNIYA and DEFENDANT OHR.

66. KRIS Y. MIN FROM DEFENDANT HANMI BANK wrote to the Chicago title company. Then, DEFENDANT YOUNG OHR, and KRIS Y. MIN from DEFENDANT HANMI BANK actively wrote to each other, and discussed the foreclosure reinstatement.

65. PLAINTIFF DUNIYA and DEFENDANT OHR then signed escrow instructions.

66. Amongst several checks, PLAINTIFF DUNIYA then made checks directly to DEFENDANT HANMI BANK in the amounts of $26,693, and approximately $3,371.30. Some Fedex receipts were made to DEFENDANT HANMI BANK.

67. Then, there was a LOAN MODIFICATION AGREEMENT between borrower and lender, DEFENDANT OHR, and DEFENDANT HANMI BANK, respectively. The latter, DEFENDANT

HANMI BANK was a signatory to this agreement. SUNDALE COUNTRY CLUB, INC. was also a signatory.

68. The STOCK PURCHASE AGREEMENT was also signed by PLAINTIFFS and DEFENDANT OHR. MOHAMMAD GORAYA also signed this agreement, and then wrote handwritten agreement about PLAINTIFFS paying DEFENDANT HANMI BANK directly to cure the default. The MANAGEMENT AGREEMENT was also signed by GORAYA and OHR.

69. The VACANT LAND PURCHASE AGREEMENT, AND JOINT ESCROW INSTRUCTIONS were signed by PLAINTIFFS and DEFENDANT OHR, as well as specifically stating that DEFENDANT HANMI bank's lawsuit would be dismissed by DEFENDANT OHR.

70. Thus, DEFENDANT OHR made DEFENDANT HANMI BANK an intended beneficiary of the LAND PURCHASE AGREEMENT. DEFENDANT HANMI BANK was a recipient of the bargain for exchange, and had knowledge of the agreement. DEFENDANT HANMI BANK was in privity of the AGREEMENT. PLAINTIFFS paid DEFENDANT HANMI BANK $29,693 IN A CHECK.

71. Unity property management LP was also involved.

72. After accepting the check and wire payments from PLAINTIFF DUNIYA, DEFENDANT HANMI BANK resold the property to UNITY and Jaydev Patel.

73. Concurrently, DEFENDANT OHR thwarted the underlying reason that PLAINTIFF DUNIYA had entered into the contract and purchased the Sundale Country Club to reorganize and rebuild the operation into a sustainable investment, DEFENDANTS were in breach and have caused PLAINTIFF DUNIYA significant monetary damages.

74. Because land is unique in nature, PLAINTIFF is entitled to specific performance of the land sale contract.

75. As a further direct and legal result, and actual and proximate causation, based on the aforestated breach of the Agreement(s), PLAINTIFFS remain entitled to monetary damages, as well as other relief in the prayer for relief according to proof at time of trial.

## SECOND CAUSE OF ACTION

### Intentional Misrepresentation

### (Against Defendants)

76. Plaintiffs reallege and incorporate Paragraphs 1-75 of this Second Amended Complaint as though fully set forth herein.

77. The tort of deceit or fraud requires: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.

78. On or about November 2018, and during the discussions between PLAINTIFFS and DEFENDANTS regarding the sale of the Subject Property, said Defendants falsely represented to PLAINTIFFS that PLAINTIFF would be granted authority and control over the business operations of the Sundale Country Club, which had been run into the ground and financially run into the red by the DEFENDANTS. PLAINTIFFS agreed that in return for the control, PLAINTIFFS would cure DEFENDANTS' default for the non-payment of the mortgage on the property, thereby avoiding an imminent foreclosure.

79. DEFENDANTS had no intention of giving control of the business operations of Sundale Country Club to PLAINTIFFS until the close of escrow and purchase of Sundale stock that PLAINTIFF purchased. DEFENDANTS made this false representation to PLAINTIFFS out of desperation to keep HANMI BANK from foreclosing, knowing that PLAINTIFFS would detrimentally rely on it completely. DEFENDANT HANMI BANK - after willingly and

knowingly accepting payment from PLAINTIFFS based on the privity to the agreement - intentionally sold the property to a third-party. This was at the instruction of Defendant OHR. The date of discovery and actual notice of HANMI BANK's conduct was in 2021 during the course of this trial.

80. PLAINTIFFS relied detrimentally on these misrepresentations even signing the agreement and making substantial payments. The date of discovery and actual notice of HANMI BANK's conduct was in 2021 during the course of this trial.

81. While relying on DEFENDANTS' misrepresentations, PLAINTIFF has suffered major monetary loss along with the loss of potential future profits that is yet to be calculated.

82. The conduct of said Defendants, collectively, was intentional, wrongful, knowing, fraudulent, malicious, oppressive, and done in bad faith. As such, Plaintiffs seek an award of actual, compensatory, actual exemplary, and punitive damages in an amount to be determined according to proof at time of trial.

### THIRD CAUSE OF ACTION

### CONTRACTUAL BREACH OF IMPLIED COVENANT OF

### GOOD FAITH AND FAIR DEALING

**(Against Defendants)**

83. Plaintiffs incorporates Paragraphs 1-82 of this Second-Amended Complaint as though fully set forth herein.

84. Every contract imposes upon each party a duty of good faith and fair dealings in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement.

85. The convent impels that in all contracts each party will do all things reasonable contemplated by the terms of the contract to accomplish its purposes. This covenant protects the benefits of the contract that the par6ties reasonably contemplated when they entered into the agreement.

86. DEFENDANTS enjoyed discretionary power affecting the rights of PLAINTIFFS during the events alleged in this Complaint. DEFENDANTS were required to exercise such power in good faith.

87. DEFENDANTS willfully breached their implied covenant of good faith and fair dealing with Plaintiffs when DEFENDANTS acted in concert willfully by making the initial misleading statements, telling PLAINTIFFS that if they cure the DEFENDANTS default, PLAINTIFFS will receive control and authority to reorganize, strategize and save the business from going under.

88. Defendants and each of them will enjoy the benefits of the Subject Property and the money gained from PLAINTIFFS because of Defendants own breach of the implied covenant of good faith and fair dealing. The date of discovery and actual notice of HANMI BANK's conduct was in 2021 during the course of this trial.

89. As such, Defendants should not be allowed to profit at another's expense without making restitution for the reasonable value of any monies, property, services, or other benefits that have been unfairly received and retained.

**FOURTH CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

**(Against Defendants)**

90. Plaintiffs reallege and incorporate Paragraphs 1-89 of this Second-Amended Complaint as though fully set forth herein.

91. Plaintiffs, pursuant to personal knowledge, have signed with Defendant Hanmi Bank, including, but not limited to the following: a COPY OF BANK FINANCING FEE AGREEMENT COPY OF ESCROW INSTRUCTIONS; COPY OF CURE DEFAULT AGREEMENT; COPY OF DEFAULT FUNDS RELEASE; COPY OF STCK PURCHASE AGREEMENT; COPY OF MINUTES OF SPECIAL MEETING OF THE BOARD OF DIRECTORS OF SUNDALE COUNTRY CLUB; COPY OF MANAGEMENT AGREEMENT; and, COPY OF LOAN TRANSFER LETTER FROM HANMI BANK.

92. Plaintiffs remain informed and believed, and thereon allege, that Defendant Hanmi Bank carelessly and negligently failed to exercise reasonable care and due diligence to avoid loss and mitigate damages which could purportedly be avoided had Defendant Hanmi Bank exercised reasonable care and diligence in their fiduciary duties.

93. Defendant Hanmi Bank omitted from advising and communicating to Plaintiffs regarding any of the Country Club loan process as it pertains to Plaintiffs and Young Ohr.

94. As a direct and proximate result of Defendant Hanmi Bank's conduct and lack thereof, Plaintiffs have incurred, and continue to incur, costs and expenses, related to litigation, consultation fees, and attorneys' fees to inspect, repair and mitigate damages, arising out of stated negligence, and to defend Plaintiffs' action.

95. Plaintiffs have incurred actual, compensatory, punitive, special and general damages, in addition to mental anguish, trauma, stress, and anxiety – with attorneys' fees and costs related to this litigation and further expenses of the real property. The date of discovery and actual notice of HANMI BANK's conduct was in 2021 during the course of this trial.

96. Plaintiffs pray for relief in the below-stated section.

///

**FIFTH CAUSE OF ACTION**

**NEGLIGENCE**

**(Against Defendants)**

97. Plaintiffs re-allege and incorporate Paragraphs 1-96 of this Second-Amended Complaint as though fully set forth herein.

98. Lenders can be held liable for simple negligence in California where the lender fails to properly supervise a project it had financed. Connor v. Great W. Sav. & Loan Ass'n (1968) 69 C2d 850, 73 CR 369. In the Connor case, the lender was held liable to purchasers of defective tract houses because as an active participant in the construction enterprise, the lender was held liable for its own negligence.

99. The two-year statute of limitations for ordinary negligence was met, because the agreement was signed on November 05, 2019. The date of discovery and actual notice of HANMI BANK's negligence was in 2021 during the course of this trial.

100. In this matter, as the lender for the subject property financing, Hanmi Bank was an active participant in Young Ohr's enterprise.

101. According to the loan documents, Hanmi Bank, which had approximately $4.5 million at stake, was to closely monitor all aspects of the lending process.

102. Plaintiffs, pursuant to personal knowledge, have signed with Defendant Hanmi Bank, including, but not limited to the following: a COPY OF BANK FINANCING FEE AGREEMENT COPY OF ESCROW INSTRUCTIONS; COPY OF CURE DEFAULT AGREEMENT; COPY OF DEFAULT FUNDS RELEASE; COPY OF STCK PURCHASE AGREEMENT; COPY OF MINUTES OF SPECIAL MEETING OF THE BOARD OF DIRECTORS OF SUNDALE COUNTRY CLUB; COPY OF MANAGEMENT AGREEMENT; and, COPY OF LOAN

TRANSFER LETTER FROM HANMI BANK.

103. Plaintiffs remain informed and believed, and thereon allege, that Defendant Hanmi Bank carelessly and negligently failed to exercise reasonable care and due diligence to avoid loss and mitigate damages which could purportedly be avoided had Defendant Hanmi Bank exercised reasonable care and diligence in their fiduciary duties.

104. Defendant Hanmi Bank knew or should have known, through the loan draw process which undoubtedly involved periodic inspections of the subject property and progress reports documenting the delays, defaults, and defects, that the subject property loan was running behind schedule.

105. Rather than pull the plug on the afflicted project, Hanmi Bank was able to conceal the default based on its misrepresentations and omissions, and pay back the increased loan amount.

106. In fact, Young Ohr, had induced and misrepresented to Plaintiffs to dismiss the lawsuit against Hanmi Bank – this was based on misrepresenting to Plaintiffs, and inducing Plaintiffs fraudulently signing the Stock purchase agreement for the vacant land and subject property.

107. Defendant Hanmi Bank omitted from advising and communicating to Plaintiffs regarding any of the Country Club loan process.

108. Defendant Hanmi Bank after accepting the payments made the sale to a different third party, Unity and Jaydev Patel.

109. The acts of defendants herein were all done willfully with malice and forethought and done to injure plaintiff so that defendants could collect more funding from showing further loan loss on the mortgage portfolio of Hanmi Bank which requires an award of punitive damages subject to proof. The bank-defendant has violated the Bank Secrecy Act, and the California Uniform Commercial Code (U.C.C.) The bank-defendant has violated California Evidence Code

section 669 in violating an ordinance, regulation, and statute – specifically, the California U.C.C., and the Bank Secrecy (U.S. Patriot Act.)

110. PLAINTIFFS had taken over the account at Hanmi Bank pursuant to the purchase and sale agreement. Bank-DEFENDANTS knew or should have known that their failure to give advice and information to PLAINTIFFS, along with Bank-DEFENDANTS omission in advising about the status of loan pertaining to the Country Club was a direct violation of the California U.C.C., and the Bank Secrecy Act.

111. For the foregoing reasons, PLAINTIFFS have suffered and continue to suffer damages in the sum which is as yet to be determined.

112. In addition to the Appraisal Contingency not being fulfilled, PLAINTIFFS can state without equivocation that the entire process undertaken by all DEFENDANTS in the consummation of the Purchase and Sale Agreement constitutes breach of contract, fraudulent actions and representations, deceptive and unfair practices, and other wrongful conduct as herein alleged.

113. Plaintiffs have incurred actual, compensatory, punitive, special and general damages, in addition to mental anguish, trauma, stress, and anxiety – with attorneys' fees and costs related to this litigation and further expenses of the real property.

114. As a direct and proximate result of Defendant Hanmi Bank's conduct and lack thereof, Plaintiffs have incurred, and continue to incur, costs and expenses, related to litigation, consultation fees, and attorneys' fees to inspect, repair and mitigate damages, arising out of stated negligence, and to defend Plaintiffs' action.

115. These acts of defendants herein were all done willfully with malice and forethought and

done to injure plaintiff so that defendants could collect more funding from the FDIC from showing further loan loss on the mortgage portfolio of Hanmi Bank which requires an award of punitive damages subject to proof.

116. For the foregoing reasons, PLAINTIFFS have suffered and continue to suffer damages in the sum which is as yet to be determined.

117. In addition to the Appraisal Contingency not being fulfilled, we can state without equivocation that the entire process undertaken by all DEFENDANTS in the consummation of the Purchase and Sale Agreement constitutes breach of contract, fraudulent actions and representations, deceptive and unfair practices, and other wrongful conduct as herein alleged.

118. Plaintiffs have incurred actual, compensatory, punitive, special and general damages, in addition to mental anguish, trauma, stress, and anxiety – with attorneys' fees and costs related to this litigation and further expenses of the real property.

119. WHEREFORE, Plaintiffs pray for relief in the below-stated section.

## **PRAYER FOR RELIEF**

Pursuant to the Complaint, Plaintiffs pray for judgment against Defendants individually, and collectively; as well as jointly, and severally, as follows:

1. For $7.50 million in damages according to proof;

2. For specific performance to the land;

3. For actual and special damages in amount to be proven at trial;

4. For general, expectancy, compensatory and treble damages in an amount to be proven at trial;

5. For economic loss in an amount to be proven at trial;

6. For punitive and treble damages in an amount to be proven at trial;

7. For pre-and post-judgment interest;

8. For reasonable attorneys' fees and costs;

9. For declaratory and injunctive relief of Plaintiffs' rights, and remedies;

10. For costs of suit and fees incurred herein; and;

11. As to all causes of action, for such other, further, and different relief which this court

deems just and proper.

///

**DATED: June 21, 2023**                    **LAW OFFICE OF RESHMA KAMATH**

_/s/ Reshma Kamath_

Reshma Kamath,
Counsel,
For PLAINTIFFS DUNIYA GROUP, INC.

## **VERIFICATION**

I am the Plaintiff in this action. I sign this on behalf of PLAINTIFF DUNIYA GROUP, INC., as the prior president, and me. I have read the foregoing second-amended complaint and it is true of my own knowledge, except as to those matters stated on information and belief, and as to those matters, I believe it to be true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: April 17, 2023

At Bakersfield City, State of California

/S/ _____

*RANDEEP SINGH DHILLON*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROOF OF SERVICE**
F.R.C.P. 5 / C.C.P. § 1013(a)(3), C.C.P. § 1010.6(a)(6) / Cal. R. Ct. R. 2.260

I'm employed in, the County of San Mateo, California. I am over the age of 18, and not a party to this action. My business address is: Law Office of Reshma Kamath, 700 El Camino Real Suite 120, #1084, Menlo Park, CA 94025, and electronic-service address is reshmakamath 2021 @ gmail.com. On June 21, 2023, I served the following document(s) on: See Attached Service List.

**VERIFIED COMPLAINT FOR DAMAGES:**

**1.      BREACH OF CONTRACT;**
**2.      INTENTIONAL MISREPRESENTATION;**
**3.      CONTRACTUAL BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**
**4.      BREACH OF FIDUCIARY DUTY;**
**5.      NEGLIGENCE; PROOF OF SERVICE;**

*///*

**ELECTRONIC SERVICE**
In electronically transmitting courtesy copies of the document (s) listed above to the email address(es) of the person(s) set forth on the attached service list. To my knowledge, the transmission was reported as complete and without error, as per the electronic service agreement between all parties and their attorneys of record, herein.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed on June 21, 2023.

*/S/ _____*
*Reshma Kamath*

**PROOF OF SERVICE**

1

**SERVICE LIST**

2

    David D. Yang (SBN 263949)

3

    David.Yang@LimNexus.com
    Sara Martinez (SBN 322655)

4

    Sara.Martinez@LimNexus.com
    LIMNEXUS LLP

5

    707 Wilshire Boulevard, 46th Floor
    Los Angeles, CA 90017

6

    Telephone: (213) 955-9500
    Facsimile: (213) 955-9511

7

    Attorneys for Defendant HANMI BANK

8

9

NORIEGA, ROBERT J
E-mail: rnoriega@youngwooldridge.com

10

Attorney for RANI, SAVITA Lien Claimant
Attorney for KUMAR, DEVENDER Lien Claimant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROOF OF SERVICE**

F.R.C.P. 5 / C.C.P. § 1013(a)(3), C.C.P. § 1010.6(a)(6) / Cal. R. Ct. R. 2.260

      I'm employed in, the County of San Mateo , California . I am over the age of 18, and not a party to this action . My business address is: Law Office of Reshma Kamath , 700 El Camino Real Suite 120, #1084, Menlo Park, CA 94025, and electronic -service address is reshmakamath 2021 @ gmail.com :

      On April 18, 2023, I served the following document(s) on: See Attached Service List.
      **VERIFIED SECOND-AMENDED COMPLAINT FOR DAMAGES:**
**1.     BREACH OF CONTRACT;**
**2.     INTENTIONAL MISREPRESENTATION;**
**3.     CONTRACTUAL BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**
**4.     BREACH OF FIDUCIARY DUTY;**
**5.     NEGLIGENCE; PROOF OF SERVICE;**

**UNITED STATES MAIL SERVICE** : In enclosing the documents in a sealed envelope or package addressed to the persons at the addresses below in depositing the sealed envelope with the United States Postal Service, with the postage fully prepaid.
///
I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed on April 18, 2023 electronically.

                      */S/ _____*
                      *Reshma Kamath*

**PROOF OF SERVICE**

**<u>SERVICE LIST</u>**

**YOUNG OHR**

6218 Sundale Ave.,

Bakersfield, CA 93309

Defendant and Cross-Complainant, *In propria persona*

**PROOF OF SERVICE**